**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

In re:

GRANNELL E. KNOX, SR.,

        Debtor.

------------------------------------------------------------------x

BEVERLY QUENTIN,

        Plaintiff,

    -against-

GRANNELL E. KNOX, SR.,

        Defendant.

------------------------------------------------------------------x

Chapter 11

Case No. 22-22958 (KYP)

Adv. Pro. No. 23-07012 (KYP)

## MEMORANDUM DECISION GRANTING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**APPEARANCES:**

PENACHIO MALARA, LLP
*Counsel to Plaintiff*
245 Main Street
Suite 450
White Plains, NY 10601
By:    Anne Penachio, Esq.
           Of Counsel

PICK & ZABICKI LLP
*Counsel to Defendant*
369 Lexington Avenue
12th Floor
New York, NY 10017
By:    Douglas J. Pick, Esq.
           Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

**INTRODUCTION**

In October 2022, a New York jury awarded $5 million in damages to Beverly Quentin ("Ms. Quentin") for sexual abuse she suffered when she was between seven and ten years old at the hands of her uncle Grannell E. Knox, Sr. ("Mr. Knox"). After Mr. Knox filed a Chapter 11 bankruptcy petition, Ms. Quentin commenced the instant action seeking a determination that the $5 million judgment is nondischargeable as a debt for "willful and malicious injury" under 11 U.S.C. § 523(a)(6).

Ms. Quentin has now moved for summary judgment on her nondischargeability claim ("Summary Judgment Motion"),[1] to which Mr. Knox objects.[2] For the reasons stated, (i) the Summary Judgment Motion is GRANTED, and (ii) the Motion to Stay Discovery (defined *infra*) is DENIED as moot.

**JURISDICTION**

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* (M-431), dated January 31, 2012 (Preska, C.J.) referring bankruptcy cases and proceedings to the Bankruptcy Judges of the Southern District of New York. The issues presented are core proceedings under 28 U.S.C. § 157(b)(2)(I). The Bankruptcy Court has exclusive jurisdiction over nondischargeability claims brought under 11 U.S.C. § 523(a)(6). *Busche v. Grover* (*In re Grover*), 667 B.R. 243, 256 (Bankr. S.D.N.Y. 2025) (citation omitted).

---

[1]   *See Plaintiff's Memorandum of Law in Support of Her Motion for Summary Judgment Granting the Relief Sought in the Complaint*, docketed on Nov. 1, 2024 ("Plaintiff Brief") (ECF Doc. # 32); *see also Plaintiff's Reply Memorandum of Law in Further Support of Her Motion for Summary Judgment Granting the Relief Sought in the Complaint*, dated Dec. 13, 2024 ("Plaintiff Reply") (ECF Doc. # 41). "ECF Doc. # _" refers to documents filed on the electronic docket of this adversary proceeding. "ECF Main Case Doc. # _" refers to documents filed on the electronic docket of Mr. Knox's bankruptcy case.

[2]   *See Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment*, dated Nov. 29, 2024 ("Defendant Brief") (ECF Doc. # 37).

## BACKGROUND[3]

### A.   The State Court Action and the Jury Trial

On July 30, 2020, Ms. Quentin commenced an action in the Supreme Court of the State of New York, County of Westchester ("State Court"), against her uncle Mr. Knox captioned *Quentin v. Knox*, Index No. 57868/2020 ("State Court Action").  In her complaint ("State Court Complaint"),[4] Ms. Quentin alleged that during a three-year period in the 1960s – specifically, when Ms. Quentin was in the 2nd, 3rd, and 4th grades – Mr. Knox repeatedly sexually abused, mentally abused, and raped Ms. Quentin.  (State Court Complaint ¶ 5.)  Ms. Quentin alleged that the abuse occurred at Mr. Knox's family home in Pleasant Valley, New York and at her grandparents' home in the Bronx, New York.  (*Id.* ¶¶ 9-10.)  Ms. Quentin said that she suffered severe physical and emotional damage as a result of Mr. Knox's actions.  (*Id.* ¶¶ 8, 12.)

The State Court Complaint was brought pursuant to section 214-g of the New York Civil Practice Law and Rules ("CPLR") known as the Child Victims Act.  The Child

---

[3]   The Court has reviewed the following documents submitted in connection with the Summary Judgment Motion:

- *The Plaintiff's Short Concise Statement of Undisputed Facts for Summary Judgment Pursuant to Federal Rule of Bankruptcy Procedure 7056*, dated Oct. 31, 2024 ("Plaintiff Fact Statement") (ECF Doc. # 30), as well as the exhibits annexed thereto;

- *Defendant's Response to Plaintiff's Local Rule 7056-1 Statement of Undisputed Facts for Summary Judgment*, dated Nov. 29, 2024 ("Defendant Fact Statement") (ECF Doc. # 36);

- *Declaration of Douglas J. Pick in Support of Defendant's Response to Plaintiff's Statement of Undisputed Facts*, dated Nov. 29, 2024 ("Pick Declaration") (ECF Doc. # 35), as well as the exhibits annexed thereto; and

- *The Plaintiff's Response to Defendant's Local Rule 7056-1 Counter-Statement of Undisputed Facts for Summary Judgment*, dated Dec. 13, 2024 (ECF Doc. # 40).

This section also includes references to judicial documents and court records filed on dockets of other cases.  The Court may take judicial notice of such documents and records.  *In re Mirena IUD Prods. Liab. Litig.*, 29 F. Supp. 3d 345, 350 (S.D.N.Y. 2014); *see* Fed. R. Evid. 201.

[4]   A copy of the State Court Complaint is attached as Exhibit C to the Plaintiff Fact Statement.

Victims Act allowed, during a finite period, a person who was under the age of 18 when they were the victim of any sexual criminal conduct to file an action against a defendant for injuries that resulted from such conduct notwithstanding the expiration of the statute of limitations for such action.  CPLR § 214-g.  "[T]he purpose of the [Child Victims Act] was to remedy the injustices to survivors of child sexual abuse by extending New York's restrictive statutes of limitations that required most survivors to file civil actions or criminal charges long before they reported or came to terms with their abuse." *Doe v. Wilhelmina Models, Inc.*, 229 A.D.3d 128, 132 (N.Y. App. Div. 2024) (citation and internal quotation marks omitted).[5]

A four-day jury trial was held between October 25 and October 28, 2022.[6]  The trial was bifurcated with the first part to determine liability and the second part to determine damages.  During the liability portion of trial, the jury heard testimony from:

- Ms. Quentin (Oct. 25 Tr. at 40:13 – Oct. 26 Tr. at 127:21);

- John Jay Knox (Oct. 26 Tr. at 128:8-135:25), who is Ms. Quentin's father;

- Beverly Ann Knox (*id*. at 136:23-154:8), who is Ms. Quentin's mother;

- Marie Bruan Knox (*id*. at 165:10-199:9), who is Mr. Knox's sister; and

- Mr. Knox (*id*. at 199:16-223:21).

---

[5]   Mr. Knox filed a motion to dismiss the State Court Action arguing, *inter alia*, that the action was time-barred.  The State Court denied the motion by decision dated August 9, 2021, a copy of which is attached as Exhibit E to the Plaintiff Fact Statement.

[6]   The October 25 and 26 trial transcripts are attached as Exhibits D and E to the Pick Declaration, and the October 27 and 28 trial transcripts are attached as Exhibits H and I to the Plaintiff Fact Statement.  References to the trial transcript will be denoted as follows: "Oct. [date] Tr. at _:_."

On October 27, after the jury heard closing arguments from both counsel (Oct. 27

Tr. at 240:22-270:4), the State Court instructed the jury as follows as to the liability

portion of the trial:

> [T]he issue to be determined by you is whether the defendant, Grannell
> Knox, had sexual contact with the plaintiff, Beverly Quentin, when the
> plaintiff was under the age of 14.  Under New York Law, it is irrelevant that
> the plaintiff may have consented to the contact.  Sexual contact is defined
> as any touching of the sexual or intimate parts of a person for the purpose
> of gratifying the sexual desire of either party.  It includes the touching of
> the actor by the victim, as well as the touching of the victim by the actor,
> whether directly or through clothing, as well as the emission of ejaculate
> by the actor upon any part of the victim, clothed or unclothed.
>
> If you find by a preponderance of the evidence that the defendant had
> sexual contact with the plaintiff, when the plaintiff was under the age of
> 14, you must find for the plaintiff.  If you find that the plaintiff has not
> proven this fact by a preponderance of the evidence, you must find for the
> defendant.

(*Id.* at 280:20-281:13.)  The following day, the jury returned a unanimous verdict in

favor of Ms. Quentin as to Mr. Knox's liability.  (Oct. 28 Tr. at 321:11-322:6.)

Before moving on to the damages portion of the trial, the State Court granted Ms.

Quentin's motion to amend her pleadings to include punitive damages.  (*Id.* at 307:5-7;

323:14-324:5.)  During the damages portion of trial, the jury once again heard testimony

from Ms. Quentin.  (*Id.* at 330:14-341:6.)  The State Court instructed the jury on the

calculation of compensatory damages (*id.* at 350:3-351:19), and then instructed the jury

as to punitive damages as follows:

> In addition to awarding damages to compensate the plaintiff for her
> injuries, you may, but you are not required to, award plaintiff punitive
> damages *if you find that the acts of the defendant that caused the injury
> complained of were malicious*.
>
> Punitive damages may be awarded for conduct that represents a high
> degree of immorality and shows such wanton dishonesty as to imply a

5

criminal indifference to civil obligations.  The purpose of punitive damages is not to compensate the plaintiff, but *to punish the defendant for malicious acts*, and thereby to discourage the defendant and other people from acting in a similar way in the future.  *An act is malicious when it's done deliberately with knowledge of the plaintiff's rights and with the intent to interfere with those rights.*

. . .

The plaintiff must establish her entitlement to punitive damages by clear and convincing evidence.  That means that with respect to punitive damages, she must prove to you that the evidence makes it highly probable that the allegations are actually what happened.

(*Id.* at 351:20-352:19 (emphases added).)

After deliberation, the jury awarded Ms. Quentin $5 million in damages comprising (i) $3 million for past pain and suffering, (ii) $1 million for future pain and suffering, and (iii) $1 million for punitive damages.  (*Id.* at 358:20-360:13; *see also* Plaintiff Fact Statement, Ex. J (copies of the liability and damages verdict sheets).)

**B.    Mr. Knox's Bankruptcy Filing and the Nondischargeability Action**

Immediately prior to the State Court's entry of judgment corresponding to the jury verdict, Mr. Knox filed a petition for relief under Chapter 11 of the Bankruptcy Code on December 22, 2022, thereby staying the State Court Action.  (ECF Main Case Doc. # 1 (bankruptcy petition).)  On March 15, 2023, Ms. Quentin commenced this adversary proceeding arguing that the debt owed to her is nondischargeable as a debt for "willful and malicious injury" under 11 U.S.C. § 523(a)(6).  (ECF Doc. # 1 (adversary proceeding complaint).)

On November 20, 2023, this Court modified the automatic stay to permit the parties to continue litigating the State Court Action to conclusion, including to permit Mr. Knox to file post-trial motions.  (ECF Main Case Doc. # 37 (order granting relief

6

from automatic stay).)  The order, however, maintained the stay on any efforts by Ms. Quentin to collect on any judgment against Mr. Knox entered in the State Court Action pending further order of this Court.  (*Id*.)

## C.   The Post-Trial Decision, the Judgment, and the Appeal

Following modification of the automatic stay, Mr. Knox moved in the State Court Action to set aside the jury verdict.  The State Court denied the motion by decision dated April 5, 2024 ("Post-Trial Decision").[7]  The State Court ruled, among other things, that "[t]he jury verdict was supported by sufficient evidence and consistent with the weight of the credible evidence."  Post-Trial Decision at 18.

On August 27, 2024, the State Court formally entered a *Judgment* ("Judgment") awarding $5 million to Ms. Quentin.[8]  Mr. Knox subsequently appealed the Judgment to the New York Supreme Court, Appellate Division, Second Department ("Appellate Division"), and the Appellate Division affirmed the Judgment by decision dated February 18, 2026.  *See Quentin v. Knox*, 246 A.D.3d 956 (N.Y. App. Div. 2026) ("Appellate Division Decision").  The Appellate Division ruled that "the record provides no basis for disturbing the jury's determination to credit the plaintiff's testimony over that of the defendant's testimony, and a fair interpretation of the evidence supports the jury's finding that there was sexual contact between the plaintiff and the defendant while the plaintiff was under the age of 14."  *Id*. at 957.

---

[7]   A copy of the Post-Trial Decision is attached as Exhibit A to the Pick Declaration.

[8]   A copy of the Judgment is attached as Exhibit K to the Plaintiff Fact Statement.

**D.    The Instant Summary Judgment Motion**

Ms. Quentin filed the instant Summary Judgment Motion on October 31, 2024 arguing that her 11 U.S.C. § 523(a)(6) nondischargeability claim should be granted as a matter of law by application of the *res judicata* and/or collateral estoppel doctrine.  (*See* Plaintiff Brief.)  Mr. Knox filed his opposition on November 29, 2024.  (*See* Defendant Brief.)  After completion of briefing, the parties notified the Court of the pending appeal in the Appellate Division.  Oral argument on the Summary Judgment Motion was adjourned pending a ruling by the Appellate Division.  Counsel to Ms. Quentin alerted the Court of the Appellate Division Decision by letter dated February 23, 2026 (ECF Doc. # 95), the Court heard oral argument on the Summary Judgment Motion on March 26, 2026, and took the matter under advisement.

## DISCUSSION

**A.    Applicable Legal Standards**

**1.    Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable hereto pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The movant bears the burden of establishing that no genuine issue of material fact exists.  *Bustamante v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024) (quoting *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 108 (2d Cir. 2023)).  "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir.

2012) (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 94 (2d Cir. 2012)).

Once the movant has carried its initial burden, "the nonmovant must set forth specific facts showing that there is a genuine issue for trial." *Bustamante*, 100 F.4th at 432 (citation omitted). When deciding whether a genuine dispute exists as to a material fact, all ambiguities must be resolved, and all reasonable inferences must be drawn, in favor of the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 651, 657 (2014) (per curiam). However, "[c]onclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact." *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)) (alteration omitted); *accord Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

### 2.    Collateral Estoppel

Principles of collateral estoppel, also known as issue preclusion, apply in bankruptcy cases and can be invoked in nondischargeability actions to prevent re-litigation of issues already decided. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991) ("[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."); *Denton v. Hyman* (*In re Hyman*), 320 B.R. 493, 499 (Bankr. S.D.N.Y.) ("There is no doubt that the doctrine of collateral estoppel applies in bankruptcy proceedings generally and in proceedings arising under Section 523(a) of the Bankruptcy Code in particular."), *aff'd*, 335 B.R. 32 (S.D.N.Y. 2005), *aff'd on other grounds*, 502 F.3d 61 (2d Cir. 2007), *cert. denied*, 555 U.S. 1097 (2009).

A "federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). "The New York law of collateral estoppel employs a two-part test: a party is estopped from relitigating an issue when that issue was necessary to the resolution of the prior action, and the party against whom estoppel is invoked had a full and fair opportunity to contest that issue in the previous litigation." *PenneCom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 491 (2d Cir. 2004) (citing *Schwartz v. Pub. Adm'r*, 246 N.E.2d 725, 729 (N.Y. 1969)).

### 3.      Nondischargeability Under 11 U.S.C. § 523(a)(6)

Section 523(a) of the Bankruptcy Code enumerates twenty categories of debts that are excepted from an individual debtor's bankruptcy discharge. 11 U.S.C. § 523(a)(1) – (20). The exceptions to discharge are "narrowly construed," and the creditor bears the burden of proving by a preponderance of the evidence that the debt is nondischargeable. *Cazenovia Coll. v. Renshaw* (*In re Renshaw*), 222 F.3d 82, 86 (2d Cir. 2000). The words "debt for" introduce many of the categories of nondischargeable debts, including the subsection invoked by Ms. Quentin's claim here. *See* 11 U.S.C. § 523(a)(6) (excepting from discharge a "debt . . . for . . . willful and malicious injury . . . ."). The phrase "debt for" as used throughout section 523(a) should be interpreted to mean "'debt as a result of,' 'debt with respect to,' 'debt by reason of,' and the like . . . connoting broadly any liability arising from the specified object . . . ." *Cohen v. de la Cruz*, 523 U.S. 213, 220 (1998) (citations omitted); *accord Major, Lindsey & Africa, LLC v. Mahn* (*In re Mahn*), 673 B.R. 270, 290 (Bankr. S.D.N.Y. 2025) ("*Cohen* is better read as imbuing 'debt for' with a broad meaning, rather than a narrow one.").

10

Section 523(a)(6) of the Bankruptcy Code provides that a bankruptcy discharge "does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The "word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphases in original). Further, section 523(a)(6) encompasses "intentional torts" rather than "negligent or reckless torts," and intentional torts "generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *Id.* at 61-62 (quoting Restatement (Second) of Torts § 8A, Comment *a*, p. 15 (1964)) (emphasis in original). "Thus, the debtor must engage in conduct where he actually intends to injure the party or engages in conduct where the consequences are 'substantially certain' to result therefrom." *Mahn*, 673 B.R. at 289 (quoting *Vyshedsky v. Soliman* (*In re Soliman*), 539 B.R. 692, 699 (Bankr. S.D.N.Y. 2015)).

"The injury caused by the debtor must also be malicious, meaning 'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'" *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Navistar Fin. Corp. v. Stelluti* (*In re Stelluti*), 94 F.3d 84, 87 (2d Cir. 1996)). "Malice may be implied by the acts and conduct of the debtor in the context of the surrounding circumstances." *Id.* (citation, internal quotation marks, and alteration omitted). "A finding of malice does not require a specific intent to harm or injure, but rather is implied when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *Hough v.*

11

*USAA Cas. Ins. Co.* (*In re Margulies*), 721 F. App'x 98, 101 (2d Cir. 2018) (summary

order) (citation and internal quotation marks omitted).

## B.    Analysis

Ms. Quentin is entitled to judgment as a matter of law under the collateral

estoppel doctrine if (i) the elements for her section 523(a)(6) nondischargeability claim

were litigated and resolved in the State Court Action, and (ii) Mr. Knox had a full and

fair opportunity to contest those matters in the State Court Action.  The Court will

analyze these issues in the sections that follow.

### 1.    The Judgment is a Debt for "Willful and Malicious Injury"

The trial proceedings in State Court leading to the jury verdict in favor of Ms.

Quentin conclusively established the elements of "willful and malicious injury" under

section 523(a)(6) of the Bankruptcy Code.  In the liability portion of the trial, the jury

found that Mr. Knox had sexual contact with Ms. Quentin when she was under the age

of 14.  (Oct. 27 Tr. at 280:20-281:13.)  In the damages portion of the trial, the jury

awarded $4 million to Ms. Quentin for past and future pain and suffering and $1 million

for punitive damages.  The State Court's jury charge leading to the award of punitive

damages is of particular relevance to Ms. Quentin's nondischargeability claim.  As set

forth *supra*, the jury was instructed that:

- they could award punitive damages only if they find that "the acts of the defendant that caused the injury complained of were malicious";
- punitive damages may be awarded where the conduct "represents a high degree of immorality and shows such wanton dishonesty as to imply a criminal indifference to civil obligations";
- the purpose of punitive damages is to "punish the defendant for malicious acts";
- an act is "malicious when it's done deliberately with knowledge of the plaintiff's rights and with the intent to interfere with those rights"; and

12

- the plaintiff must prove her "entitlement to punitive damages by clear and convincing evidence" meaning that she must prove that "the evidence makes it highly probable that the allegations are actually what happened."

(Oct. 28 Tr. at 351:20-352:19.)

The jury's award of punitive damages to Ms. Quentin establishes that Mr. Knox's actions were "willful" and "malicious" within the meaning of 11 U.S.C. § 523(a)(6). Mr. Knox's actions were "willful" because the jury found that his sexual abuse of Ms. Quentin was "done deliberately," with "knowledge" of Ms. Quentin's rights, and with the "intent" to deprive her of those rights. Thus, by awarding Ms. Quentin punitive damages, the jury found that Mr. Knox sexually abused Ms. Quentin while being substantially certain of the consequences of his actions and the injury that would result therefrom. *See also T.K. v. Love* (*In re Love*), 347 B.R. 362, 368 (Bankr. W.D. Mo. 2006) ("The only plausible inference regarding the Debtor's intent is that he knew or should have known, that his sexual molestation of Plaintiff, who was seven years old . . . would cause harm to her."); *Henderson v. Woolley* (*In re Woolley*), 288 B.R. 294, 303 (Bankr. S.D. Ga. 2001) ("It defies human response and sensitivity to conclude that the inevitable product of the sexual molestation of a child is not intended. Sexual misconduct with a minor is objectively certain to result in harm to the minor victim and the perpetrator is expected to know that.") (citation, alterations, internal quotation marks omitted).

The jury's award of punitive damages also establishes that Mr. Knox's actions were "malicious." The State Court explicitly instructed the jury to only award punitive damages if they found that Mr. Knox acted maliciously. The State Court further explained that punitive damages are appropriate if the conduct represents a "high degree of immorality and shows such wanton dishonesty as to imply a criminal

13

indifference to civil obligations." The strict standard for punitive damages embodied in the State Court's jury charge is sufficiently equivalent to the standard applicable under 11 U.S.C. § 523(a)(6) to determine maliciousness. *See Hough*, 721 F. App'x at 101 (Malice is implied under section 523(a)(6) where "the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another.") (citation and internal quotation marks omitted).

Indeed, by awarding punitive damages, the jury found that Mr. Knox's actions were willful and malicious under a stricter evidentiary standard than that applicable to nondischargeability claims under 11 U.S.C. § 523(a). The jury was specifically instructed to only award punitive damages if Ms. Quentin proved an entitlement to such damages by "clear and convincing evidence." As set forth above, Ms. Quentin's nondischargeability claims are governed by the less onerous "preponderance of the evidence" standard.

Last, Ms. Quentin was injured by Mr. Knox's actions. In addition to punitive damages (which are intended to punish Mr. Knox rather than compensate Ms. Quentin), the jury awarded Ms. Quentin *compensatory damages* comprising $3 million for past pain and suffering and $1 million for future pain and suffering. Moreover, the "sexual abuse *itself* constitutes an injury – namely, an offensive bodily contact" to which a minor child cannot consent. *Becker v. Reed* (*In re Reed*), Adv. P. No. 24-6018, 2025 Bankr. LEXIS 2922, at *6 (Bankr. D. Kan. Oct. 31, 2025) (emphasis in original).

In his opposing brief, Mr. Knox attempts to re-litigate the trial by arguing that evidence was lacking to justify a verdict for Ms. Quentin in the State Court Action. (*See, e.g.*, Defendant Brief at 5 ("The only evidence supporting the jury award were bare accusations made 50 years after the fact and self-serving testimony."); *id.* ("The jury

14

verdict was entirely the creature of inferences, passion and prejudice."); *id.* at 6 ("Plaintiff offered no medical records, no treatment notes, no psychological reports evidencing any mental trauma, no observable injury and no expert opinion . . . ."); *id.* at 16 ("[T]here was no evidence of injury, much less any evidence of pain and suffering, and the jury verdict amount itself was whimsical and not based on nor supported by any evidence that Plaintiff can point to.").) But Mr. Knox has already raised these arguments in the State Court Action, and they were rejected in the Post-Trial Decision as well as the Appellate Division Decision. In his motion to set aside the jury verdict, Mr. Knox argued for a new trial on the grounds that the verdict was against the weight of the evidence, deviated materially from what would be reasonable compensation, and ran counter to the interest of justice. Post-Trial Decision at 2. The State Court denied Mr. Knox's motion and thoroughly examined the evidence adduced at trial. *Id.* at 7-14.

First, State Court Justice Blackwood examined the evidence of the sexual abuse itself. Ms. Quentin testified she was subjected to between 40 and 50 acts of sexual abuse from Mr. Knox when she was between the ages of seven and ten years old, including episodes of rough sexual intercourse, oral sex, and instances of forcible penetration. Testimony from all witnesses portrayed weekends at the upstate farm with extended family in which children were left to play among each other and work in the fields. Justice Blackwood concluded that "[i]t is credible that these episodes could have taken place right under the nose of the adults in the family preoccupied with caring for younger children and tending to farming chores." *Id.* at 16.

Second, Justice Blackwood examined the evidence as to why Ms. Quentin failed to report the sexual abuse when it was happening. Testimony from Ms. Quentin showed that, at her age, she could not process what was happening in real time, she feared Mr.

15

Knox, who she viewed as an authority figure, and Mr. Knox had threatened to abuse Ms. Quentin's sister if Ms. Quentin resisted the abuse. Further testimony showed that Ms. Quentin invited Mr. Knox to her wedding only out of respect for her parents and to keep stability for her terminally ill aunt who attended the wedding. *Id.* at 16-17.

Third, Justice Blackwood examined the evidence regarding Ms. Quentin's motivation in bringing suit. Ms. Quentin first disclosed Mr. Knox's abuse to a roommate in college. Mr. Knox's counsel argued that Ms. Quentin had lied to her roommate, was compelled to repeat the lie to others, and further compelled to file suit when New York passed the Child Victims Act in order to continue the lie. Justice Blackwood viewed the evidence differently. She noted that Ms. Quentin – who was married, had children, and a job – had no motive to file the lawsuit. A "fair view" of the evidence showed that Ms. Quentin "carried the burden of this sexual abuse her entire life and suffered intense physical and emotional pain for decades." *Id.* at 17. "[A] reasonable view of the evidence is that this was about relieving the weight of bearing this pain alone, not going through the ordeal of a lawsuit just to stick to a lie she told her roommate and parents decades ago." *Id.*

Fourth, Justice Blackwood examined the evidence regarding a February 2018 phone call in which Ms. Quentin's father confronted Mr. Knox (*i.e.*, his brother) about the abuse and then abruptly hung up the phone. The State Court observed that the jury could have drawn two different inferences from Mr. Knox's failure to respond to his brother's allegations: (1) Mr. Knox was so outraged by the allegation that he never wanted to speak to his brother again, or (2) Mr. Knox did not respond because the allegations were true. Justice Blackwood opined that the jury likely made the latter

16

inference. *Id.* at 18 ("The jury's credibility determination in favor of the plaintiff is not against the weight of the evidence.").

Justice Blackwood concluded as follows:

In this case, the jury verdict was based on a fair interpretation of the evidence and this court finds no reason to disturb the jury's resolution of credibility issues in favor of the plaintiff. Furthermore, where, as here, the verdict can be reconciled with a reasonable view of the evidence, the prevailing party is entitled to the presumption that the jury adopted the reasonable view. Under these circumstances, the jury reasonably could have accepted the plaintiff's description of the sexual abuse that took place when she was between the ages of seven and ten years old, and awarded her those damages based on the testimony and evidence put forth in her case. The jury verdict was supported by sufficient evidence and consistent with the weight of the credible evidence.

*Id.* at 18.[9]

On appeal, Mr. Knox reiterated the argument that the verdict was against the weight of the evidence. The Appellate Division too rejected Mr. Knox's argument:

Here, the record provides no basis for disturbing the jury's determination to credit the plaintiff's testimony over that of the defendant's testimony, and a fair interpretation of the evidence supports the jury's findings that there was sexual contact between the plaintiff and the defendant while the plaintiff was under the age of 14. . . . Thus, the jury's verdict on the issue of liability was not contrary to the weight of the evidence.

Appellate Division Decision, 246 A.D.3d at 957 (citation omitted). The Appellate Division also affirmed the award of compensatory and punitive damages:

Here, considering the nature and extent of the injuries sustained by the plaintiff and the relevant precedent, the damages awards for past and future pain and suffering did not deviate materially from what would be reasonable compensation. . . . Moreover, contrary to the defendant's contention, the punitive damages award was not excessive. . . . The defendant's remaining contention is without merit.

---

[9]   The State Court also denied Mr. Knox's motion to set aside the verdict in the interest of justice based on evidentiary matters (Post-Trial Decision at 19-25), based on misconduct of counsel (*id.* at 25-27), and based on the unreasonableness of the damages award. *Id.* at 27.

17

*Id.* at 959 (citations omitted).

Having unsuccessfully argued in the State Court Action that the jury verdict was against the weight of the evidence, Mr. Knox is estopped from relitigating the same issue in this proceeding. *Buechel v. Bain*, 766 N.E.2d 914, 919 (N.Y. 2001) ("Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity.") (citation omitted), *cert. denied*, 535 U.S. 1096 (2002).

### 2.    Mr. Knox had a Full and Fair Opportunity in State Court

Mr. Knox had a full and fair opportunity to litigate the matters pertinent to this nondischargeability claim in the State Court Action. Factors that a court may consider when determining this issue include "the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation." *King v. Fox*, 418 F.3d 121, 130 (2d Cir. 2005) (quoting *Gilberg v. Barbieri*, 423 N.E.2d 807, 809 (N.Y. 1981)), *certifying questions to* 851 N.E.2d 1184 (N.Y. 2006); *accord Bd. of Educ. v. N.Y. State Human Rights App. Bd.*, 106 A.D.2d 364, 365 (N.Y. App. Div. 1984).

Here, Mr. Knox was facing serious accusations of sexual abuse by his niece as well as significant monetary damages. Thus, he was highly motivated to contest these matters and did so through counsel. A review of the State Court record shows that Mr. Knox's trial counsel (Mr. Michael D. Horn, Esq.) capably represented Mr. Knox in pre-trial matters and during trial including through his examination of witnesses and spirited opening and closing statements to the jury. The State Court is unquestionably

18

well-suited to preside over these types of cases, and Mr. Knox received a fair trial by a jury of his peers. After receiving an unfavorable verdict, Mr. Knox filed post-trial motions which were resolved by the State Court as well as an appeal which was resolved by the Appellate Division. Therefore, Mr. Knox clearly had a full and fair opportunity to contest these matters in the State Court Action.

### 3. Conclusion Regarding Nondischargeability Claim

Based on the foregoing, Ms. Quentin is entitled to summary judgment on her section 523(a)(6) nondischargeability claim under the doctrine of collateral estoppel.

## C. Motion to Stay Discovery

Ms. Quentin filed a motion to stay discovery ("Motion to Stay Discovery") contemporaneous with her Summary Judgment Motion. (ECF Doc. # 33.) Because the Court is granting summary judgment on Ms. Quentin's nondischargeability claim, no discovery is needed in this action, and the Motion to Stay Discovery is moot.

### CONCLUSION

For the reasons stated, the Summary Judgment Motion is GRANTED, and the Judgment is nondischargeable as a debt for "willful and malicious injury" under 11 U.S.C. § 523(a)(6). The Motion to Stay Discovery is DENIED as moot. Counsel for Ms. Quentin is directed to submit a (i) proposed order resolving the Summary Judgment Motion and Motion to Stay Discovery, and (ii) a final judgment concluding this adversary proceeding.

/s/ Kyu Y. Paek



**Dated: June 30, 2026**
**Poughkeepsie, New York**

_____
**Hon. Kyu Y. Paek**
**U.S. Bankruptcy Judge**